*In re* YOUNG ESTATE.

YOUNG *v.* WEHMEIER.

DECISION OF THE COURT.

1. GUARDIAN AND WARD—CHANGE OF BENEFICIARY IN POLICIES OF INSURANCE.

> Denial of guardian's petition to change beneficiary in life insurance policies, who had been designated by ward while he was mentally competent, *held,* proper.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 25 Am Jur, Guardian and Ward § 105.
Power of guardian of incompetent to change beneficiary in ward's life insurance policy. 21 ALR2d 1191.
[2] 20 Am Jur 2d, Courts §§ 107–110.
[4] 25 Am Jur, Guardian and Ward § 105.

SEPARATE OPINION.

DETHMERS, KELLY, BLACK, and O'HARA, JJ.

2. INSURANCE—CHANGE OF BENEFICIARY—JURISDICTION OF COURTS.

*The function of the Supreme Court does not extend to the adjusting of expected post-mortem benefits between a divorced wife of a mentally-incompetent ward and an alleged common-law wife under circumstances not showing a present need or benefit to the ward's estate in making change of beneficiary of insurance policies from the common-law wife to the estate of the ward.*

3. GUARDIAN AND WARD—CHANGE OF BENEFICIARY IN POLICIES OF INSURANCE.

*A guardian of a mentally incompetent ward has no authority to change beneficiaries under life insurance policies who had been designated while ward was competent, although the guardian may, if necessary to provide funds for the support and maintenance of the ward, surrender a policy or consent to a reduction in the amount thereof.*

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ.

4. GUARDIAN AND WARD—CHANGE OF BENEFICIARY IN POLICIES OF INSURANCE.

*Guardian of mentally incompetent person was not entitled to have a change of beneficiary under life insurance policies issued to the ward while he was mentally competent, where there was not shown a present need for changing the beneficiary.*

Appeal from Wayne; Bowles (George E.), J. Submitted March 3, 1965. (Calendar No. 68, Docket No. 50,706.) Decided June 7, 1965.

Petition in the probate court by Victor H. Wehmeier, guardian of the estate of Robert Lee Young, a mentally incompetent person, to change beneficiary of certain insurance policies issued to guardian's ward. Order by probate court granting right to change. Appeal by Nellie E. Young, ward's original

beneficiary, to circuit court. Order vacated. Guardian appeals. Affirmed.

*Victor H. Wehmeier,* for guardian.

*Carl Z. Millen,* for beneficiary.

O'Hara, J. The issue presented upon this appeal is whether the order of the circuit court of Wayne county vacating an order of the probate court of that county should be affirmed or reversed.

What should be clearly understood is that the issue is *not* whether the probate court of Wayne county had the authority to enter the order which it did. This point is conceded by the able circuit judge in his opinion. We quote:

"So far as the jurisdiction of probate court * * * it is this judge's view that it may order that which clearly benefits the estate presently. * * * It is my further view that the change must be clearly shown to be of present, immediate benefit, * * * one of necessity to the management of the estate."

The facts: Robert Lee Young was adjudged mentally incompetent on August 1, 1956. Theretofore in 1953, one Nellie King and Robert Lee Young claimed to have entered into a common-law marriage. A slight impediment to such an arrangement existed at the time—both were married to other people. Later in 1953, Mr. Young was divorced by his wife. In 1955, Mrs. King was divorced by her husband. Nothing in the interim indicates that either party repudiated the claimed common-law marriage. In fact, it was reasserted. In March, 1954, Robert Young, while fully competent, took out 2 insurance policies of $500 and $3,000, respectively, and named Nellie (King) Young the beneficiary, reserving the right of change thereof. One Betty Crooks, not

specifically identified in this record, was appointed
successor güardian for Robert Young on August 1,
1956. Mayhaps, for all we know she is Betty Jane
Young, Robert's divorced wife. On July 28, 1958,
Mr. Young was committed to Ypsilanti State hospital
where he remains as a public charge. On September
29, 1959, Betty Crooks resigned as guardian, and
on December 9th of that year she was replaced by
the present plaintiff, Attorney Wehmeier.

Meanwhile, on November 21, 1956, Nellie E. Young
filed a bill of complaint in Wayne circuit court seek-
ing to affirm (before the effective date of Act No 44
of the Public Acts of 1956[1] requiring, in addition to
consent after January 1, 1957, a license and solemni-
zation) her common-law marriage. Her claimed
common-law husband by then having been adjudged
incompetent, his guardian, the present plaintiff, ap-
pealed the decree of affirmance to us. We vacated
the decree of affirmance on the ground that neither
party to the alleged common-law marriage was
shown to have denied or doubted the marriage rela-
tionship, and that jurisdictional facts to entertain
the bill were not alleged in the circuit court. We
added:

"The question is not presented to us, nor do we
intend to infer one way or the other, whether there
was a common-law marriage existing between Nellie
E. Young and Robert L. Young in 1956." *Young*
v. *Wehmeier*, 369 Mich 110, at p 113.

Summarizing these facts then we have a situation
wherein a married couple—the Youngs—become es-
tranged, but not divorced. The husband conceives
an affection for another woman estranged from her
husband. They proclaim a common-law marriage,
despite the aforementioned impediment thereto.
The impediment is subsequently removed by 2 di-

---

[1] CLS 1961, § 551.2 (Stat Ann 1957 Rev § 25.2).—REPORTER.

vorces. The husband, the incompetent here, while still in possession of his faculties, takes out 2 insurance policies, the death benefit of which is payable to the object of his affection—his alleged common-law wife. He is adjudged incompetent and ends up a public charge in a State maintained mental institution. His guardian seeks to change his designated beneficiary on insurance policies issued after his estrangement from his subsequently divorced wife. His guardian asserts to the probate court that such change is to the benefit of the guardianship estate. The probate judge authorizes the change. The beneficiary, by him named while he was competent, employs counsel and asserts her right to remain his beneficiary. Denied relief in the probate court, she appeals. The circuit judge, on review, asks the eminently logical question—"What benefit to this guardianship estate will result from this change?" The guardian asserts on the petition previously filed in probate court (1) that he (the guardian) has been unable to accumulate a reserve for unusual expenses; (2) that in the event of his ward's death, there would be no funds for his suitable burial; (3) that his, the ward's alleged common-law wife has shown no interest in him and no longer "visits him in the hospital." Therefore, it is to the best interest of the ward that his estate be made the beneficiary of the policies instead of the one selected by the ward while competent.

The circuit court says, in legal effect, and we paraphrase his position: I see no present benefit that would accrue to ward's estate from this proposed change. You—guardian—have presently the authority to cash in the policy or borrow upon it if there is a present need for it. No benefit from this change would accrue to the ward until after he departs this world. This is the only effect of a change of beneficiary.

What the circuit judge did not say, and what is an obvious inference from the record, the real reason for the proposed change is to cut off the alleged common-law wife from any benefit she might receive upon the ward's death. The guardian heretofore, by appeal to this Court, defeated affirmation of the common-law marriage. He now seeks to divert the death benefits from the claimed common-law wife as beneficiary to the ward's estate.

We do not propose in this proceeding to untangle whatever equities may exist as between a divorced wife and an alleged common-law wife. Judge Bowles clearly perceived the issue. He allowed the guardian, over objection, to make a record, by his own testimony, to supplement the grounds he alleged in the probate petition and to try to establish a present ascertainable benefit to the incompetent ward's estate. That record established nothing more than was alleged in the petition except possibly that $1,925 of the ward's estate was expended on the appeal from the circuit court decree affirming the common-law marriage between the ward and the designated beneficiary. This Court is the arbiter of leʳal controversy. Its functions do not extend to adjusting expected post-mortem benefits between a divorced wife and an alleged common-law wife under the circumstances here shown.

We are in accord with the finding of the circuit judge:

"On the facts [*of which he was the sole judge, including the permissible inferences therefrom*] we do not find an immediate or compelling need for such change."

The language of the Wisconsin supreme court[2] well expresses our position:

---

[2] *Kay* v. *Erickson*, 209 Wis 147, at p 152 (244 NW 625, at p 626, 84 ALR 361).

"While a guardian probably may surrender a benefit certificate or insurance policy and consent to a reduction in the amount thereof for the purpose of paying a policy loan to stop the running of interest charges, and while a guardian may undoubtedly surrender a policy of his ward upon payment to him of the cash surrender value thereof for the purpose of providing necessary funds for the support and maintenance of his ward or for what, at the time, may seem to be in the interest of his ward (*Maclay v. Equitable Life Assurance Society,* 152 US 499 [14 S Ct 678, 38 L ed 528]), no case is cited to our attention, and we have found none, which supports the contention that a guardian of an incompetent may designate a beneficiary in a policy issued to his ward while the latter was competent. No case has been found in which such a contention has ever been made. In our opinion a guardian has no more authority to designate a beneficiary in a policy of insurance upon the life of a ward than he would have to change the will of his ward by executing a codicil thereto or by executing a wholly new will."

The order of the circuit court vacating the probate court order is affirmed. Costs to the appellee.

DETHMERS, KELLY and BLACK, JJ., concurred with O'HARA, J.

SOURIS, J. (*concurring*). I concur in affirming the order of the circuit court simply on the ground that the circuit judge was correct in concluding that the guardian had failed to establish any present need for changing the beneficiary of the incompetent's insurance policies.

I do not subscribe my Brother O'HARA's opinion because I do not consider it necessary to decision in this case, nor do I consider it otherwise desirable, to adopt summarily the holding of the Wisconsin supreme court in *Kay v. Erickson,* 209 Wis 147 (244

NW 625, 84 ALR 361). Perhaps someday we will have to decide whether in this State an incompetent's guardian under some circumstances can change the beneficiary named in an insurance policy issued on the life of the incompetent, but I am not at this time prepared to say that I would agree with the decision in *Kay* v. *Erickson*. In any event, we need not make that decision now.

T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ., concurred with SOURIS, J.